**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | |
|---|---|
| ROBERT MEDINA, | No. EDCV 09-804 CW |
| Plaintiff, | DECISION AND ORDER |
| v. | |
| MICHAEL J. ASTRUE, Commissioner, Social Security Administration, | |
| Defendant. | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge. Plaintiff seeks review of the Commissioner's denial of disability benefits. As discussed below, the court finds that the Commissioner's decision should be reversed and this matter remanded for further proceedings.

**I.   BACKGROUND**

Plaintiff Robert Medina was born on April 1, 1958, and was fifty years old at the time of his administrative hearing. [Administrative Record ("AR") 122, 38.] He has a twelfth grade education and past relevant work experience as a janitor and a stock person. [AR 132,

128.] Plaintiff alleges disability on the basis of arthritis, back and hip problems, memory loss, and depression. [AR 127.]

## II. PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on April 23, 2009, and filed on May 1, 2009. On November 17, 2009, defendant filed plaintiff's Administrative Record ("AR"). On January 5, 2010, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party. This matter has been taken under submission without oral argument.

## III. PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for social security disability insurance ("SSDI") and supplemental security income ("SSI") on September 18, 2006, alleging disability since July 29, 2006. [JS 2.] After the application was denied initially and upon reconsideration, plaintiff requested an administrative hearing, which was held on September 3, 2008, before Administrative Law Judge ("ALJ") Jay E. Levine. [AR 63-64, 79, 84, 35.] Plaintiff appeared with counsel, and testimony was taken from plaintiff and a vocational expert. [AR 37.] The ALJ denied benefits in a decision dated October 28, 2008. [AR 20.] When the Appeals Council denied review on February 19, 2009, the ALJ's decision became the Commissioner's final decision. [AR 4.]

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The Commissioner's (or ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the

court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

### V. DISCUSSION

#### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at 721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to prove that, considering residual functional capacity ("RFC")[1], age,

---

[1] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v.

education, and work experience, a claimant can perform other work which is available in significant numbers.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

### B.   THE ALJ'S EVALUATION IN PLAINTIFF'S CASE

Here, the ALJ found that plaintiff had not engaged in substantial gainful activity since July 29, 2006 (step one); that plaintiff had "severe" impairments, namely depression and a severe impairment of the musculoskeletal system (step two); and that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three).  [AR 11.] Plaintiff was found to have an RFC for light work, except limited to four hours standing and/or walking and precluded from fast paced work. [AR 12-13.] Plaintiff was found unable to perform any past relevant work (step four). [AR 18.] The ALJ found that plaintiff could make a successful adjustment to other jobs in the national economy, such as a laundry sorter, collator, or sorter/grader (step five). [AR 18-19.]  Accordingly, plaintiff was found not "disabled" as defined by the Social Security Act. [AR 19-20.]

### C.   ISSUES IN DISPUTE

The parties' Joint Stipulation identifies three disputed issues:

1. Whether the ALJ properly considered the treating physician's opinion.
2. Whether the ALJ properly considered the treating psychiatrist's opinion.
3. Whether the ALJ posed a complete hypothetical question to

---

Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c).  Pain may be either an exertional or a nonexertional limitation.  Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c).

the vocational expert.

[JS 2-3.]

### D.   ISSUE ONE: THE TREATING PHYSICIAN'S OPINION

In December 14, 2006, Dr. Brooks, plaintiff's primary care doctor, completed a physical capacities form in which he determined that plaintiff could lift and/or carry twenty-five pounds occasionally and ten pounds frequently or constantly. [AR 318-319.] He also determined that plaintiff could stand and/or walk for four hours and sit-up for four hours in an eight-hour workday, and occasionally climb, balance, stoop, and crawl. [Id.] Dr. Brooks found that plaintiff could frequently reach waist to chest and chest to shoulders, could occasionally reach below knees, waist to knees, and above the shoulders, and was precluded from kneeling and crouching. [Id.] He also determined plaintiff was restricted in using his hands and fingers for repetitive motions. [Id.]

A consultative report was completed by Dr. Dorsey, a Board certified orthopedic surgeon, on February 10, 2007. [AR 291-295.] Dr. Dorsey determined that plaintiff could lift and/or carry twenty pounds occasionally and ten pounds frequently. [AR 294-295.] He also found that plaintiff could stand and/or walk six hours in an eight-hour day with no limitations on sitting. [Id.] He determined that plaintiff could occasionally stoop or crouch. [Id.] The physicians from the State Disability Determination Services, in a report dated February 27, 2007, concluded plaintiff could occasionally lift up to fifty pounds, frequently lift and/or carry up to twenty-five pounds, and could both stand and/or walk and sit up to six hours in each eight-hour workday. [AR 305-308.] During his administrative hearing, the plaintiff reported that he could lift and carry up to forty pounds

occasionally, fifteen pounds frequently, and stand up to three hours in an eight-hour workday. [AR 15, 53.]

The ALJ gave "some weight" to the portions of Dr. Brooks's conclusions that were consistent with the Board specialized state agency review physicians and the consultative examiner. [AR 15.] In deciding to only give "some weight" to Dr. Brooks's opinions, the ALJ noted that Dr. Brooks, while the treating doctor, was a family practitioner and not a specialist. [Id.] He also stated that there was no evidence of Dr. Brooks referring the plaintiff to a specialist for further treatment and that the course of treatment, which "consisted only of refilling the [plaintiff's] prescriptions" for drugs (mainly OxyContin), was not consistent "with what one would expect if [plaintiff] were truly as limited as the doctor had reported." [AR 15,50.] He additionally noted that Dr. Brooks's most recent notations, from July 10, 2008, indicated that plaintiff was doing well physically. [AR 15, 342.] Plaintiff argues that the ALJ did not provide specific and clear reasons for rejecting the opinions of Dr. Brooks and did not expressly state which portions of the opinion he was rejecting or accepting.

Ninth Circuit cases distinguish among the opinions of three types of physicians: those who treat the claimant (treating physicians), those who examine but do not treat the claimant (examining or consultative physicians), and those who neither examine nor treat the claimant (non-examining physicians). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). The opinion of a treating physician is given deference because he is employed to cure and has a greater opportunity to know and observe the patient as an individual. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).

The opinion of the treating physician, however, is not necessarily conclusive as to either physical condition or the ultimate issue of disability. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), Rodriguez v. Bowen, 876 F. 2d 759, 761-62 & n.7 (9th Cir. 1989). "'The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'" Reddick, 157 F.3d at 725. (quoting Matthews v. Shalala, 10 F.3d 678, 780 (9th Cir. 1993). If a treating physician's opinion on disability is controverted, it can be rejected if the ALJ provides specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830; see also Benecke v. Barnhart, 379 F.3d 587, 591 & n.1 (9th Cir. 2004).

In this case, the ALJ incorporated several aspects of Dr. Brooks's opinions into his determination of plaintiff's RFC and provided legitimate reasons for discounting those opinions he did not credit. As noted above, the ALJ gave "some weight" to Dr. Brooks's opinions, concluding as Dr. Brooks did, that plaintiff could only stand and/or walk for up to four hours a day and that he could lift no more than twenty-five pounds occasionally and ten pounds frequently or constantly. [AR 12-15.] On the other hand, the ALJ gave "great weight" to the opinion of Dr. Dorsey and adopted his RFC determination that plaintiff had no restrictions on sitting, as opposed to Dr. Brooks's opinion that plaintiff was limited to four hours of sitting each day. [AR 12, 15-16.] The ALJ similarly did not include Dr. Brooks's determination that plaintiff was limited in the use of his hands and fingers. [Id.]

8

The ALJ did not err in crediting Dr. Dorsey's opinions where they differed from the conclusions of Dr. Brooks because the ALJ's rationale for his decision in this regard was legally sufficient and supported by the record. First, the ALJ determined that Dr. Dorsey's opinion was entitled to more weight because he is a specialist. [AR 15.] The opinions of specialists in their area of expertise are entitled to more weight than those of general practioners. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bunnell v. Sullivan, 912 F.2d 1149, 1153 (9th Cir. 1990); see also 20 C.F.R. §416.927(d)(5). Second, the ALJ noted that Dr. Brooks did not refer plaintiff to a specialist for further treatment and limited his own care of plaintiff to prescription drugs for pain management, and that neither of these were consistent with the extent of the limitations Dr. Brooks found in plaintiff. [AR 15.] Treatment that is inconsistent with the level of disability claimed is grounds for rejecting the testimony of a treating physician. See Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007) (noting that it is proper to examine the "nature and extent of the treatment relationship between the patient and the treating physician")(internal quotation marks omitted)(citing 20 C.F.R. §404.1527(d)(2)(i)-(ii)); Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (concluding that it was proper for an ALJ to reject the opinion of a treating physician when his treatment did not consist of what "one would expect" for someone who was disabled under the Social Security Act).

Finally, the ALJ noted that Dr. Brooks's most recent evaluation of plaintiff, from July 10, 2008, said that plaintiff was doing well physically. An ALJ may properly consider inconsistencies within the physician's findings in evaluating his credibility. See Johnson v.

Shalala, 60 F.3d 1428, 1432-22 (9th Cir. 1995); Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes, 881 F.2d at 751). See also Khounesavatdy v. Astrue, 549 F.Supp.2d 1218, 1228 (E.D. Cal. 2008)("[I]t is appropriate for an ALJ to consider the absence of supporting findings, and the inconsistency of conclusions with the physician's own findings, in rejecting a physician's opinion."); cf. Orn v. Astrue, 495 F.3d at 634 ("the consistency of [the] treating physicians' reports merits additional weight). Thus, the ALJ provided specific and legitimate reasons for rejecting the conclusions of Dr. Brooks which were not incorporated into the RFC finding. Accordingly, issue one does not afford a basis for reversal of the ALJ's decision here.

### E. ISSUE TWO: THE TREATING PSYCHIATRIST'S OPINION

Plaintiff first reported to the Department of Mental Health on June 21, 2006. He was seen by Jacqueline Bonine, a clinician, who indicated that plaintiff was "on time, w[ith] a slightly disheveled appearance, unshaven w[ith] unkempt clothing." [AR 214.] She indicated that plaintiff was not oriented to time, and expressed feelings of depression and sadness. [Id.] He denied any homicidal or suicidal feelings or having hallucinations and Jacqueline Bonine assessed plaintiff as having recurrent major depressive disorder and dementia. [Id.] Plaintiff returned to the clinic on August 24, 2006 and had an initial evaluation with Dr. Emery Zimmerman, M.D., the staff psychiatrist, on August 30, 2006. [AR 222, 221.] At that appointment plaintiff said he was taking Effexor prescribed by his family doctor for depression. [AR 221.] Plaintiff also mentioned that he had been denied social security because of what his doctor had said about his condition. [Id.] On September 7, 2006, plaintiff told the clinician in

charge of his case that he "need[ed] to be declared disabled by another doctor." [AR 220.] Plaintiff met with Dr. Zimmerman on October 11, 2006, and at this meeting plaintiff said that his medications were effective, that he wasn't experiencing any side effects, and that he was sleeping better. [AR 219.] Dr. Zimmerman indicated that plaintiff had no grave disability. [Id.] Two days later, meeting with his case manager, Sheereen Ahranjani, plaintiff said that he was feeling better and again asked for a form from Dr. Zimmerman in order to get social security. [AR 218.]

Dr. Zimmerman completed a Short Form Evaluation for Mental Disorders for plaintiff on November 13, 2006. [AR 211-213.] He diagnosed plaintiff with major depressive disorder and indicated that plaintiff was disheveled, had slow speech, retarded motor activity, and irritable behavior, was disoriented, had an impaired memory, average intelligence, a depressed mood and a flat affect. [Id.] He noted that plaintiff's medical problems contributed to his depression. [AR 213.] He rated plaintiff as having "poor" abilities in the following areas: to understand, remember, and carry out complex and simple instructions, to maintain concentration, attention, and persistence, to perform activities within a schedule and maintain regular attendance, to complete a normal workday and workweek without interruptions from psychologically based symptoms, and to respond appropriately to changes in a work setting. [Id.]

In the administrative decision, the ALJ found that plaintiff had depression, a severe mental impairment. [AR 11.] He determined that plaintiff had mild restrictions in activities of daily living, moderate limitations in social functioning, moderate difficulties with regard to concentration, persistence or pace, and has had no episodes

of decompensation. [AR 12.] In making this assessment, the ALJ gave "minimal weight" to the conclusions of Dr. Zimmerman. [AR 16.] In contrast, the ALJ gave "great weight" to the opinions of the non-examining Board certified State Agency psychiatrist Dr. Hurwitz, whose report was prepared based on a review of the medical records on January 4, 2007 and affirmed by Dr. Loomis on June 12, 2007. [AR 17, 265-267, 320-322.] Dr. Hurwitz found that plaintiff had moderate limitations in his ability to carry out detailed instructions, to maintain attention and concentration for extended periods, to interact appropriately with the public, and to set realistic goals or make plans independently of others. [Id.]

Here, the ALJ gave legally sufficient reasons for discounting the conclusions stated by Dr. Zimmerman and affording weight to the opinions of the State Agency psychiatrists. See Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999) (concluding that the opinions of a non-examining medical expert may constitute substantial evidence if they are consistent with the evidence in the record). First, the ALJ noted that the evaluation from November 13, 2006, was completed by Sheereen Ahranjani, a clinician with a master's degree in social work ("MSW"), and only signed by Dr. Zimmerman. The federal regulations distinguish between opinions coming from "acceptable medical sources," such as physicians, and those coming from "other sources." 20 C.F.R. § 404.1513(a) and (d). Medical evidence provided by an MSW clinician does not come from an "acceptable medical source." 20 C.F.R. §404.1513(a); 20 C.F.R. §416.913(a). While the form is signed by Dr. Zimmerman, it was reasonable for the ALJ to find that its conclusions reflect those of

12

the clinician, not Dr. Zimmerman.[2]  As the ALJ noted, there is nothing in Dr. Zimmerman's notations to warrant such limitations. [AR 16-17.] See Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001).

Second, the ALJ noted that plaintiff had only met with Dr. Zimmerman twice, concluding that his "opinion should not be afforded the weight of a treating doctor." [AR 16.] As discussed above, treating doctors are entitled to deference. Supra 7-8.  While Dr. Zimmerman only saw plaintiff twice, there is no set amount of time to establish a psychiatrist as a treating doctor. See 20 C.F.R. § 404.1502.  However, a psychiatrist is not considered a treating doctor if he is being seen "not based on...medical need for treatment or evaluation, but solely...to obtain a report in support" of a disability claim. Id.  Additionally, the frequency of treatment must be consistent with the disability claimed. Id.; see also Benton v. Barnhart, 331 F.3d 1030, 1035-1036 (9th Cir. 2003).  In this case, the ALJ permissibly weighed both the fact that plaintiff repeatedly mentioned his need to be declared disabled by Dr. Zimmerman for the purpose of obtaining social security and the infrequency of plaintiff's visits to Dr. Zimmerman.[3] [AR 16.] Even if Dr. Zimmerman were considered a treating physician, the "length of the treatment relationship and the frequency of examination" are factors the ALJ can

---

[2]  Dr. Zimmerman only saw the plaintiff twice, and at no point indicated any of the limitations recorded on the Evaluation Form. [AR 211-221.] His evaluation of plaintiff one month before signing the form indicated that plaintiff had no grave disability and was responsive to the Effexor he was being prescribed by Dr. Brooks. [AR 219.] One month after completing the form, on December 20, 2006, Dr. Zimmerman again noted that plaintiff's medication was effective, that his mood was stable, and that he had no grave disability. [AR 303.]

[3]  The ALJ also noted that plaintiff missed his November 15, 2006 appointment with Dr Zimmerman. [AR 16, 226.]

include in his analysis of the medical evidence.  See Orn v. Astrue, 495 F.3d at 631 (quoting 20 C.F.R. §404.1527(d)(2)(I)).

Finally, the ALJ noted that the treatment notes from Dr. Brooks contained no indications of plaintiff having "poor memory, dementia, of being incoherent, being disheveled, being disoriented to time, or ha[ving] retarded motor activity." [AR 17.] The notes of Dr. Brooks consist almost entirely of refilling prescriptions and, as the ALJ also noted, these prescriptions were given without any "special precautions for a person allegedly with dementia or an inability to comprehend the ramifications of overdosing." [AR 230-232, 245-246, 250-253 311-314, 327-329.] Accordingly, issue two does not warrant reversal of the ALJ's decision.

**F.   ISSUED THREE: THE HYPOTHETICAL POSED TO THE VOCATIONAL EXPERT**

At the Administrative Hearing, the ALJ asked the vocational expert two hypothetical questions. [AR 58-59.] First, he asked if a hypothetical individual of plaintiff's age and education who could lift or carry twenty pounds occasionally, ten pounds frequently, stand or walk four hours and sit six hours in an eight hour day and frequently climb, balance, stoop, kneel, crouch, and crawl, but who could not perform fast-paced work, could find a job in the national economy. [AR 58.] The vocational expert answered that such a person could find a job as a laundry sorter, collator, or sorter/grader. [AR 58-59.] The ALJ then asked if this same hypothetical person could find a job if he was "off task at least twenty percent of the time, due to pain and/or depression," and the vocational expert said such a limitation would preclude any work. [AR 59.] The ALJ made use of this first hypothetical in his decision, and determined that given

plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that plaintiff could perform. [AR 18-19.]

Plaintiff correctly argues that the ALJ's hypothetical to the vocational expert was incomplete. [JS 13-14.] The hypothetical posed to the vocational expert must include all of plaintiff's limitations. Andrews v. Shalala, 53 F.3d 1035, 1044 (9th Cir. 1995); Embrey v. Bowen, 849 F.2d 418, 423 (9th Cir. 1988).  The ALJ "is not free to disregard properly supported limitations."  Robbins v. Social Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006).  The ALJ fully incorporated plaintiff's physical limitations, restricting the hypothetical individual to someone who could lift or carry twenty pounds occasionally, ten pounds frequently, and stand or walk four hours in an eight hour day.  However, the ALJ unjustifiably summarized all of plaintiff's mental limitations into a preclusion from fast paced work. That is, the ALJ concluded earlier in his decision that plaintiff had mild restrictions in activities of daily living, moderate limitations in social functioning, and moderate difficulties with regard to concentration, persistence or pace, but the only limitation included in the hypothetical was related to the pace of work to be performed. This did not accurately convey plaintiff's limitations to the vocational expert and does not represent a complete hypothetical.  See Andrews v. Shalala, 53 F.3d at 1044 (reversing based on the ALJ's failure to include plaintiff's moderate social limitations in the hypothetical to the vocational expert); Gamer v. Sec'y of Health & Human Serv., 815 F.2d 1275, 1279 (9th Cir. 1987) ("Hypothetical questions asked of vocational experts must 'set out all of [plaintiff's] impairments.'") (quoting Gallant v. Heckler, 753 F.2d

1450, 1456 (9th Cir. 1984)). Accordingly, reversal on issue three is appropriate.

### G. REMAND FOR FURTHER PROCEEDINGS

The decision whether to remand for further proceedings is within the discretion of the district court. Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. Harman, 211 F.3d at 1179 (decision whether to remand for further proceedings turns upon their likely utility). However, where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. Id. Here, as set out above, the absence of a complete hypothetical posed to the vocational expert left an outstanding issue to be determined before a finding regarding disability can be made. Accordingly, remand is appropriate.

//
//
//
//
//
//
//
//
//
//

**VI. ORDERS**

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **REVERSED**.

2. This action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings as discussed above.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: June 11, 2010

_____
CARLA M. WOEHRLE
United States Magistrate Judge